22-1301, and we'll hear first from Mr. Drysdale. Thank you, Your Honor. May it please the Court, Tom Drysdale for the defendant, Robert Anderson. We're here on a pretty simple question today. That question is whether Robert Anderson should have gotten an entrapment instruction in his jury trial. Well, it's easy to state the question. Yes. I don't know how easy it is to answer it. Thank you, Your Honor. And I think, as this Court's well aware, we're working under the standard announced by the en banc panel in Mayfield, and to get an instruction, all we have to do is proffer some evidence on both prongs, that the government induced this crime and that he was not predisposed to commit the crime. I want to be clear on what we don't have to do. We do not have to show that there was no evidence that he absolutely was not entrapped. We don't have to show our evidence is better than theirs, and we don't have to rebut their evidence. We just have to show that there is some evidence on both prongs. So let's look at inducement. Mayfield says it's solicitation plus some other conduct. What's your plus here? Because it seemed to me that you were arguing that the plus is the fact that there was an undercover officer involved in posing as a minor, and that would mean entrapment would be available in every one of these cases. I don't think so, Your Honor. I don't think that's the plus. I think that's the star. That's one of the plus factors because that's a fraudulent misrepresentation. That's a specific plus factor for Mayfield. We have an undercover officer who starts out as an 18-year-old and sends pictures, multiple, of a 30-year-old woman. Those are fraudulent misrepresentations, so that's our starting point. Is that undisputed that the pictures that were sent were of a 30-year-old because I couldn't find those in the record anywhere? I don't have a transcript site off the top of my head, but it is admitted in the trial transcripts that this woman was 30 years old. Okay. And so that's the starting point. And so then we have a three-hour time period, over three hours, where this conversation is taking place before the government decides to spring its trap that this is really a 15-year-old. The government kind of wants to dispute that here and call it 16 active minutes, but that's a factual question to argue to the jury whether it's active minutes or it's still three hours before the government says, oh, hey, by the way, I'm 15. And what's really problematic about that is the amount of times that the FBI decided to pass up the opportunity to tell Mr. Anderson that he was talking about sex with a 15-year-old girl. At 5.45 p.m., the agent says, I'm looking for fun, and Mr. Anderson explicitly says, I want sex. There's no, hey, by the way, you want sex with a 15-year-old. At 7.12 p.m. But Bailey, so to speak, has said sometime between 7.12 and 7.16, mom's out of town, so secret fun. I mean, they're kind of planting the seeds that this is a young person. If it's a 30-year-old person, who cares if mom's out of town? Well, Your Honor, I think part of the issue here is she's portraying an 18-year-old, and lots of 18-year-olds still live with their mothers, particularly in Kentucky. Regrettably, that's true. Particularly in Kentucky, Illinois, where there's a junior college. And so, again, that's a jury question. Is that a seed of underage, or is that just an 18-year-old saying, I'm home alone? Nobody's here supervising me. I'm 18. I got the house. It's a jury question. What do you have to say about the government's argument? You emphasized the 11 suggestions to come over to my house, none of which are accepted. Correct. The government tells us, well, they're really talking there not about whether to meet, but just about how and when. Yeah, well, I think that they're saying, come over to my house. And he's saying, well, you know, no, I'm not going to do that. And he's suggesting a public place. And he's saying, let's go to the Circle K. And they're going back and forth for a long time. And this is all after the age disclosure.  But, again, that's for the jury to weigh. He refuses 11 times to go to the trap house and then says, I'd rather meet at a Circle K. Does the jury think that's enough? As you read Mayfield and the Supreme Court's precedents in this area, is the fact that he expresses a fear, in essence, of getting caught enough of a show of reluctance to support giving the instruction? I think that the case law is pretty clear that just saying, hey, I don't want to go to jail here, that's not really the reluctance that we're looking for. But reluctance is just one factor in the hopper of many. The government certainly was free to argue in front of the jury that, you know, all he was really scared about here was getting caught. Well, fine, they can argue that in arguing why he was not trapped. It's not really the standard here. I don't know that I necessarily agree with that because, I mean, in Mayfield we acknowledge that people have dark impulses. The Supreme Court, I think in the Sherman case that was discussed in Mayfield, talked about, well, of course Mr. Sherman was inclined to want to get access to heroin. We have nothing here to show that Mr. Anderson was inclined to want to get access to an underage individual without the government's inducement. Can I go back, though, to see if we can possibly separate – I know it's hard – the inducement side of things, which in principle seems to focus on what the government did to create a crime where there might not otherwise have been a crime, and then on the other side the predisposition, which is the one that has these various factors that we've thrown out as maybe helpful touch points for analysis. So, Judge, I need to ask you, what on the inducement side, other than being persistent, did the government do? There's this beginning conversation on February 14th toward the end of which I could, I'm 15, how old are you? And then it seems to be done by about 737, and then it picks up again with Anderson texting. So are these things showing that it isn't really the government inducing? Anderson's in the game, he's doing this? What is it beyond just keeping up the conversation that the government's doing to induce him to take part in this assignation? Well, certainly, Your Honor, so February 14th specifically we're relying on everything that comes before the age disclosure, which I said earlier is the multiple opportunities the FBI passes up to say, you're talking to a 15-year-old. Then we go to February 15th and we talk about, now, yes, he does reinitiate the conversation. Admittedly, weighs against him, the jury could have weighed that against him. But we have downplaying harm to a minor because on transcript at 114, the FBI reaffirms sexual experience with adults by saying, well, I've slept with men as old as 24. That's the Perez-Rodriguez case from the First Circuit that says downplaying harm. But is this really, is Perez-Rodriguez really applicable? Because in Perez-Rodriguez it was one adult male saying it to another adult male. Here you have a minor saying it. Sure, Your Honor, but both roads converge at the same place. It's somebody downplaying the harm of sexually abusing a minor. And so I think it is very applicable here. I think that is definitely a plus factor, this underage individual saying that I've been with multiple men who are older than me, some as old as 24. We have further confusion. We have more pictures of a 30-year-old woman sent on February 15th. That's another plus factor. We have Anderson on the 15th asking to go for a ride, makes it very clear, I just want to hang out. I don't want to do anything sexual. The FBI says that's not good enough for us, so they're further pushing here. Which might go to Anderson's predisposition. I don't know what it does on the government side other than that they just, you know, maybe what they're doing is, I'm just trying to think. Sometimes you see the government using financial pressure. You know, there have been loans. Sometimes you see the government, I'm not sure what they do to make this particularly likely that there will be an encounter with an underage person. And again, Your Honor, I think it's just the question that says that's before this court is, you know, not whether the government has put forth some evidence that he wasn't induced. It's whether we've shown some. And again, we think that the repeated opportunities for the FBI to stop, you know. Your best is the persistence and that they just don't give it up. They keep hammering. I think it's the persistence, the downplaying the harm to the minor, and the confusion of repeatedly saying, I'm 18, I'm 15, here's a 30-year-old picture. Those are all factors that point to inducement that allow a rational jury to make this decision. And what's your best evidence that he is not predisposed? Well, first of all, Your Honor, the government admits that two of the five may feel factors way in favor of us, and then they balance the other three. That's the type of balancing test that's directly reserved for a jury. But the government only has really two pieces of evidence. That's the mom comment, which we've explained, and this comment about whether she could get pregnant. And the government says, well, that's evidence that he knows she's under 15. Or it's a question about contraception, which is equally likely the jury can weigh it. So faced with nothing other than that, the government just simply relies on the fact that he took the bait. To my knowledge, one's ability to get pregnant doesn't terminate at the age of 15. I believe that's true. And so then they just basically rely on the fact that he took the bait. And Mayfield says that that alone is not enough for predisposition. There's nothing else. Thank you very much, Mr. Dreisel. We'll have a moment for rebuttal as well. Mr. Hodges for the government. Good morning, Your Honors. Grant Hodges on behalf of the United States of America. May it please the Court. In our view, this case is resolved by two key well-established principles involving the doctrine of entrapment. The first, which I think as the defendant concedes is established in Mayfield, that the standard run-of-the-mill sting operation where a defendant is simply offered the opportunity to commit the crime on customary terms, that does not amount to government inducement, that there has to be more. It has to be solicitation plus, as Judge Saini, you asked about. But let's pause there for a moment, Mr. Hodges. There's offering the opportunity to commit the crime. There's offering it twice or three times or 10 or 11 times. At some point, it becomes haranguing almost, not just offering the opportunity. If the government had left it alone after this I could, I'm 15, how old are you remark, he says 45. That apparently is a bit of a fib. But multiple invitations might tip an otherwise, well, a person who otherwise would have had the moral fortitude to withstand this over the edge. I completely agree, Judge Wood. And so what? Does it have to be 50 times or 100 times? Why isn't this just a jury issue on the Mayfield thing? If Judge Mim had given this jury instruction, actually, usually when juries get this instruction, they find no entrapment anyway. But that's because they've weighed the factors, the evidence that's before them. Well, Your Honor, I think because there isn't really that kind of haranguing, to use your word, in this case. What there is, and the defense really focuses this argument about the persistence. But they keep saying, come to, Bailey keeps saying, come to the house. He keeps saying no. Your Honor, I think they're discussing logistics of where to meet. But that isn't necessarily even relevant to the crime. But logistics of where to meet at the house offers the opportunity, let's say, for some kinds of behavior that being at the Circle K doesn't. So you could drive around innocuously. You could meet at the Circle K and have something to eat and see if you like the other person. A lot of things that could happen at the Circle K, all of which are innocuous, not at all like at the house. Yes, Your Honor, but here the crime is attempted enticement. So the substantial step would have been completed by the time he shows up at the Circle K or whether he shows up at the house. Even if he thought she was 18 and he's meeting at the Circle K with somebody who thinks is a woman of the age of consent, that's attempted enticement? Your Honor, the first time that he offers to meet at the Circle K is immediately after she has told him that she is 15. And then she actually, Bailey, just use the name for ease of reference, declines meeting with him, and they basically leave it at that night. He then reinitiates the contact the next day. In the meantime, Bailey has also said again, Mom is out of town. You could come here. After the defendant reinitiates that? No, still on the 14th. That's said twice, as I see it, on the 14th. It is, Your Honor. She mentions the mom being out of town, so secret fun, I believe, is the phrase she used. Yeah, so we obviously have seen worse cases of entrapment with threats of violence or implicit or coercion, harassment, et cetera. But we also said in Mayfield that subtle, persistent, or persuasive efforts can amount to that plus factor of inducement. This just seems to me like a pretty indistinct spectrum of behaviors, and it's hard for me to see what line you want us to draw that would say this stays away from a jury, that you don't reach a jury. Your Honor, I think in terms of subtle or persistent or persuasive, it is aimed at ultimately inducing the commission of the offense. So that is, I think, the limiting principle here. So in terms of persistence about where to meet or repeated requests about to come here or go there, I don't think really goes to convincing this defendant to retract. Sure sounds like a jury question, given all the opportunities he would have had to walk away from this. Well, Your Honor, and obviously this was presented to Judge Mim before, and he agreed that the defendant didn't meet their burden on either standard. So if that's the court's position with respect to inducement. If you want to get to predisposition, I've got a different set of questions, which was Judge Mim seemed to say that it was the defendant who suggested criminal activity first. Yes, Your Honor. That doesn't seem correct to me, at least the way this happened. The defendant was proposing legal sexual activity with an adult, and it's not until the government says, I'm 15, that things shift over to the criminal side. Yes, Your Honor. I think Judge Mim was focused on after the age comes out, where the defendant not only reinitiates, but also begins making, I think, a series of sex-related comments about what the defendant, or what Bailey would like to do. But I guess he's saying that. Yes, that's not clear. And in any event, he's in essence weighing competing factors, which sure feels like a jury decision, and the kind of weighing that we said in Mayfield as clearly as we could is not appropriate at this stage. Well, Your Honor, I think what Mayfield also said with respect to predisposition, which I think is particularly important here, is that the most – first off, it's a holistic inquiry that looks at all of these factors. And then the second is that the most significant factor is whether the defendant was reluctant to commit the offense. And at predisposition, I believe Mayfield talked about how there needed to be a definition before you could really talk about the multi-factor test. And the definition that was settled on is the likelihood the defendant would have committed the crime without the government's intervention. And why isn't that a jury question on this, when he keeps saying no?  Or at least not yet. He says not yet, and he wants to go to the circle. He wants to meet her. Maybe he wants to make sure she's old enough. Who knows? He's skeptical about these pictures that are being transmitted. Your Honor, I don't believe that he ever suggests any reluctance to have sex with a 15-year-old throughout the entirety of the conversation. And in fact – He's expressing – Sure he does. He does a lot, actually, and part of it's because he doesn't want to be caught. He's very clear about that. He has a little girl at home and things like that. He says, I don't want to go to jail. Yeah, he doesn't want to go to jail, so that's a form of reluctance, it seems to me. And he really wants to check things out, and he doesn't know. How can you know in a text exchange if the person is really 15, if they're really 18, if they're 30? How can you tell? Well, Your Honor, I think that would go to his intent to commit the offense. And the jury found that he knew or believed that she was 15 years old. I don't think it necessarily goes to his predisposition to commit the crime. And further, to Judge St. Eve's point, I think he's reluctant about getting caught. And as I think defense counsel appropriately conceded, that can't be enough. I'm not sure that's correct. Why do you think that's insufficient? Insufficient? Oh, Your Honor, I think because the reluctance has to go to the crime itself. Says who? I mean, so much of our criminal law is based on this heroic assumption that people are tempted to do bad things and will carry out a risk-reward calculation, right? Yes, Your Honor. Is that insufficient? The fact that you think about such things? That the threat of prison makes somebody reluctant to do something that's tempting? Your Honor, apologies, I don't have a case to cite. I think Mayfield and Sherman reject it. Didn't Mayfield and BARDA also reject that? Apologies, Your Honor. Because BARDA, we said it's not relevant to the inducement inquiry whether additional efforts at persuasion are required because the target of the sting operation is too busy with other things, too reverent toward the law, too cautious about the possibility, or whatever the case may be. That seems to suggest that reluctance doesn't have to be a moral or ethical reluctance. Well, Your Honor, I think there is also a wealth of case law, however, on the point that, and I believe that this case is Unrein, which we cite in our brief, about the concern that it's a sting operation or that an individual is a government agent actually goes more properly to the defendant's intent. And I think in particular with this case, the defendant's reluctance is not that dissimilar from defendants in other sting cases, where, for instance, maybe there's a controlled buyer or something like that and the person is worried that the person they're selling to is law enforcement. Unrein is the unpublished 11th Circuit non-presidential decision? It is, Your Honor, but it collects numerous cases on that point as well, though. And I see that my time has expired, so unless there are further questions. Hang on just a second. Okay. Thank you very much. Thank you, Your Honor. Mr. Drysdale, an extra minute or two? So I want to make something clear. I did not concede that I don't want to go to jail is not enough to show reluctance. That's enough to show reluctance. What I suggested is I don't know that this court can find that he was not predisposed just because of his reluctance, but there are other things that support that he was not predisposed. Judge Hamilton, you cited to Mayfield subtle, persistent efforts. That is exactly right. And then you asked, I don't know what you want. Well, it's clear what they want. They want the standard that was announced in United States v. Note by this court in 2011 that doesn't exist anymore after Mayfield. That says that the government employed pressure tactics or used coercion to induce the defendant. That's what they want. That's not the standard anymore after Mayfield. Government opened up by saying that, talking about standard sting operations, this isn't one. They started off with an adult. This isn't an old chat room case where they immediately say, you know, 15 female from Illinois. That's not what we have here. This is not a standard sting operation. Judge Mim decided that he was not entrapped. The government thinks he was not entrapped. That is neither of their questions. That question belongs to the jury because we showed some evidence of inducement and some evidence that he was not predisposed. The conviction should be reversed, and a new trial should be ordered with a properly instructed jury. Thank you, Your Honors. All right. Our thanks to both counsel. The case is taken under advisement.